### The Texas & Pacific Railway Company v. James Murphy.

1. Railway Company—Liability of.—The Texas and Pacific Railway Company was liable for damages caused by the Southern Pacific Railway Company prior to the 21st of March, 1872, the date when the consolidation of said companies was effected in pursuance of legislative enactments.

2. Railway company—Negligence—Pleading.—In a suit for damages against a railway company on account of the alleged negligence of its agents, it is not necessary that the petition should negative, either by facts stated or by direct averment, the existence of contributive negligence on the part of plaintiff; an exception to this rule exists when the petition, from its averments, would establish, if unexplained, a *prima facie* case of negligence of the party injured.

3. Negligence.—Negligence, in one sense, is a quality dependent upon, and arising out of, the duties and relations of the parties concerned, and is as much a fact to be found by the jury, as the alleged acts to which it attaches by virtue of said duties and relations.

4. Same.—In the absence of law defining the acts which constitute negligence, it is a fact to be found by the jury on evidence, and it is error to instruct a jury as to what acts constitute negligence when the law is silent as to such acts.

5. Charge of court.—Article 1464, Paschal's Dig., is mandatory and peremptory. It leaves no discretion to the judge as to whether or not he shall "charge or comment on the weight of evidence," or as to whether or not he shall "submit questions of fact solely to the jury;" but in his charge, questions of law must be separated from

questions of fact, and the latter be decided by the jury alone. The statute presumes that the jury is as competent to decide questions of fact as the judge is to determine questions of law.

6. NEGLIGENCE—CHARGE OF COURT.—Acts of negligence may be of a character so extreme and so clearly established by uncontradicted evidence, that this court would not on appeal disturb a verdict rendered on a charge, in which the court below had departed from the statute and instructed the jury that such acts constituted negligence; but in such case it must appear manifest that he who complains of the charge had not been injured by it.

7. NEGLIGENCE—WHEN MATTER OF LAW—RAILWAY.—When by statute a specific duty is imposed on a railway company in regard to the running and management of its train, a breach of such duty by which one receives personal injury, may be declared in a charge of the court as matter of law to be wrongful or negligent.

APPEAL from Harrison.   Tried below before the Hon. M. D. Ector.

This suit was brought by James Murphy, to recover $20,000 damages, alleged to be due on account of the negligence and gross misconduct of the conductor on a passenger train of the Southern Pacific Railroad Company. The petition alleged, that plaintiff had a ticket from Jonesville to Hallsville, on the company's line; that on the 26th day of May, 1871, he was waiting for the train at Jonesville when it arrived; that during its stoppage he was at a convenient distance from the train, waiting for the signal to be given to start; that when the signal was given, he proceeded to get on board at the usual entrance, but that the cars started at the same instant in which the signal was given, and in the attempt to get on board, he was violently thrown from the train by reason of the rapidity with which the train was moving, and his right arm falling on the iron rail, was cut off before he could remove it; that said injury was caused by the gross negligence and mismanagement of plaintiff in not stopping five minutes at Jonesville, as required by the statute. Amended petitions were filed, which are noticed in the opinion, in which a consolidation of the Texas and Pacific Railway Company with the Southern Pacific Company is alleged.

The answer of the company consisted of a general denial, and, by amendment, it was alleged that defendant was not a passenger; that he was drunk, and attempted to get on the train when it was in motion, and while another was in the gangway, with whom he was struggling when he fell; that his injury was not caused by the negligence of the company's agents; that the train did not leave the station until after the usual signal, and that plaintiff had paid nothing as a passenger.

The jury returned a verdict for $7,000 against the company, for which judgment was rendered. The charge of the court is too lengthy for insertion, but those parts of it to which the opinion chiefly refers are sufficiently indicated by the opinion itself.

*Stedman* and *Sexton*, for appellant, contended—

1. That not a case can be found, where, upon a sale by one corporation to another, the purchaser has been held bound to answer in unliquidated damages for the torts of the vendor.

2. On the proposition that a passenger who attempts to get on a moving train of cars is guilty of contributory negligence, they cited Garrett *v.* Manchester and Lawrence R. R. Co., 16 Gray, 501; 55 Ill., 379; and Phillips *v.* The Rennselaer and Saratoga R. Co., 49 N. Y., 177.

3. On the proposition that it was the duty of the court below to instruct the jury what facts would constitute contributory negligence, they cited R. R. Co. *v.* Aspel, 23 Penn., 145; Van Schaick *v.* Hudson River R. R. Co., 43 N. Y., 530; Garrett *v.* Manchester and Lawrence R. R. Co., 16 Gray, 501; 53 Penn., 250; Deyo *v.* New York Central R. R. Co., 34 N. Y., 9; 24 Vt., 487; and 11 Minn., 296.

They also referred, on the question of negligence generally, to 6 Coldwell, (Tenn.,) 45; 2 Bosworth, (N. Y.,) 374; 43 Mo., 405; 9 Wis., 202; 21 Wis., 372; 44 Miss., 466; 23 La. An., 264, 462, 492; 3 Vroom, (N. J.,) 88; 26 Ind., 228; 4 Bush, (Ky.,) 593; 40 Miss., 374.

*George L. Hill,* for appellee.

I. Where two companies are consolidated into one, the new company is liable to pay all the debts and obligations of both companies existing before the consolidation. See cases cited in Lacey's Digest of Railway Decisions, page 134, secs. 347–8, and page 135, secs. 24, 25. (I. B. & W. R. Co. v. Carr, 35 Indiana; Prouty v. L. S. & M. R. Co., 52 N. Y.; C. C. & I. C. R. Co. v. Powell, Administrator, 40 Indiana; Stevenson v. S. P. R. R. Co., decided by this court, at Tyler, October, 1874.

II. The defendant was guilty of violation of law and of gross negligence in the management of the train, 1st, in not stopping at Jonesville station five minutes, (see Paschal's Dig., art. 6532, act of November 6th, 1866;) 2d, in not giving notice of intended departure, by the usual signal. It cannot be imputed to plaintiff as negligence that he did not anticipate culpable negligence on the part of defendant. He had a right to presume that the defendant would obey the law, and exercise all proper care and diligence, and act on that belief. (Shearman & Redfield on Negligence, sec. 31; P. and T. R. Co. v. Hagan, 47 Penn., 244; Beisiegel v. N. Y. C. R. R. Co., 34 N. Y., 622; Penn. R. R. Co. v. Ogier, 35 Penn., 60; Ernst v. H. R. R. Co., 35 N. Y., 9.)

III. Contributory negligence is a question for the jury, being one of fact. (Beisiegel v. N. Y. C. R. R., 34 N. Y., 622; Johnson v. H. R. R. Co., 20 N. Y., 66; Phila. and T. R. Co. v. Hagan, 47 Penn., 244; Feler v. N. Y. R. R. Co., 49 N. Y., 47; Ernst v. H. R. R. Co., 35 N. Y., 38.)

IV. An attempt to get upon a train in motion is necessarily negligence. (Shearman & Redfield on Negligence, sec. 282; Evansville and C. R. Co. v. Duncan, 28 Ind., 441.)

V. Where a party by the wrongful act of another has been placed in circumstances calling for an election between leaving or boarding a train in motion, or submitting to an inconvenience and a further wrong, the defendant cannot avoid the consequences of its own wrong by charging negli-

gence on the plaintiff. (Filer *v.* N. Y. C. R. R. Co., 49 N. Y., 47; Penn. R. R. Co. *v.* Kilgore, 32 Penn., 292; Foy *v.* London B. and S. C. R. R. Co., 18 C. B. R., N. S., 225; Siner *v.* G. W. R. Co., L. B., 3 Exch., 150; Penn. R. Co. *v.* Ogier, 35 Penn., 60; Biesiegel *v.* N. Y. C. R. R. Co., 34 N. Y., 622; Fero *v.* B. S. L. R. R. Co., 22 N. Y., 213; Johnson *v.* W. C. and P. R. R. Co., 70 Penn., 357.)

ROBERTS, CHIEF JUSTICE.—The appellee brought a suit in 1871 against the Southern Pacific Railroad Company, for damages, for an injury to his person by the negligence and misconduct of the conductor of one of its trains, in running the same upon the road; and during the pendency of the suit, alleged in an amended petition, that the Southern Pacific Railroad Company and the Texas and Pacific Railway Company had been consolidated, and that said latter company was liable for the said damages. It was proved on the trial by Hall, who had been vice president of the former company, that the consolidation took place on the 21st of March, 1872. Appellee also alleged and read in evidence the several acts of the Legislature of the State of Texas, in relation to said consolidation of the two companies.

The appellant excepted to the petition, because the Texas and Pacific Railway Company was not liable for such damages so incurred, which was overruled.

The same question was raised by a charge, asked by the appellant, and refused by the court, upon the trial of the cause.

So far as anything appears in the pleadings of the parties and in the evidence upon the trial, we are of opinion that the court did not err.

The correctness of his rulings is deducible substantially from the decision of this court, in reference to the effect of said consolidation, in the case of Stephenson *v.* Texas and Pacific Railway Company, 42 Tex., 162.

Appellant contends that the petition is defective, in not

having averred that the injury was inflicted upon him without any fault on his part in the transaction.

The petition, so far as it is necessary to be stated on this subject, alleged that appellee had procured a ticket as a passenger; was waiting at the Jonesville station; was at a convenient distance from the cars, where they had stopped, awaiting the signal to be given by the conductor; said conductor neglectfully, and in utter disregard of the convenience and safety of the passengers traveling and wishing to travel on said train, gave the said signal of departure, and at the same instant of giving said signal, caused said train to move, and your petitioner, immediately upon the giving of said signal, proceeded to get aboard of said train, by the means and at the usual entrance of the cars of said train, and your petitioner, in attempting to get aboard of said train as aforesaid, was thrown from said train " by reason of the great rapidity with which the said train was then moving," and fell with his arm upon the rail of the track; and before he could remove it, it was run over and cut nearly off by the wheel of the car, so that it had to be amputated. It is further alleged, that the defendant, by the negligence and gross misconduct of said conductor of said train, crippled and maimed the petitioner by the loss of his hand and arm, as aforesaid, to his damage twenty thousand dollars.

The petition is amended by stating that the train was not stopped at said station five minutes, as was the duty of the conductor to do; and if it had been, he would have had time to get on the train without injury.

Again, by amendment, it is alleged that petitioner " was standing in about thirty feet of said station, where the said train stopped; that he started to said train, with the view of going aboard of the same, and that the said train moved off without giving any signal before starting; that he got to said train as soon as possible, and in endeavoring to get aboard of same as aforesaid was thrown from said train

by reason of the movement of the same, and was injured as set out in the original petition."

The negligence of the defendant, by which the injury upon plaintiff was produced, is repeated in the several amendments to the petition.

The petition sufficiently alleges that, by the negligence of the defendant, the injury was produced which entitled him to recover damages for it. Inasmuch as the petition does not aver that he, in doing as he did, was not guilty of negligence, the question upon this point is, do the facts as stated in the petition show that he also was guilty of negligence in the effort to get upon the car under the circumstances stated in the petition. If so, he makes the defense of contributive negligence for the defendant in stating his own case. We must infer, from what is stated, that the car was moving, or in the act of moving, when he reached it and made the attempt to get in it. If moving, how fast, at that time, is not stated, nor the time that elapsed while he was making the effort, but only that when he was thrown from the car it was "by the great rapidity with which it was then moving." It may be understood that the signal was an invitation to the passengers to get on, as he alleges; he was waiting for the signal to get on the train, or a signal for departure literally, upon the supposition that the passengers had time to get on the train. Under either interpretation, we cannot hold that the act of endeavoring to get on the train, at the time and under the circumstances stated, was necessarily an act of contributive negligence. We are referred to a case, wherein it is held that the petition must negative, either by the facts stated or by direct averment, the existence of contributive negligence. (E. & C. Railroad *v.* Dexter, 24 Ind., 413.)

It is believed that such ruling has originated from the following cases, where the facts appeared in the petition, which established, *prima facie* at least, the negligence or fault of the

party injured: E. & C. R. R. Co. v. Hiatt, 17 Ind. R., 102; 13 Ind., 135.

Suppose, for instance, it is alleged that a person, while on the defendant's track, is injured by the running of the cars upon the track; *prima facie*, he shows himself to be where he ought not to be when the train is running there, and in that case he should state such circumstances or make such averments as would justify or excuse the fact of his being then on the track, in the way of the cars. (Ib.; and see original case, Presdt. & T. of T. Mt. Vernon v. Dusonschitt, 2 Carter, Ind., 586.)

It is often stated that the plaintiff must show that the injury was caused by the negligence of the defendant, without any fault or negligence on his part. It would be more correct, it is thought, to say that the plaintiff must show that the injury of which he complains was produced by the negligent acts of the defendant, under such circumstances as did not develop any negligence on his part, contributing to his injury. In the absence of proof, his negligence would not be presumed. (Button v. The H. River R. R. Co., 18 N. Y., 259; Redfield on Carriers, &c., sec. 370, and note 20, referring to 27 Vt., 62, 37 Vt., 501.)

The case of a party's own negligence, concurring with that of the defendant in producing an injury, is merely an exception to the general rule, that he can recover for any injury inflicted on him by the negligent acts of the defendant. (Chapman v. New Haven R. R. Co., 19 N. Y., 342.) Though it would be the safer practice, plaintiff is not bound to allege the non-existence of an exception that may or may not exist as a defense to his action. It is said to be an exception, and is so only, because its existence negatives the existence of the fact that the injury was caused by the negligence of defendant. The charge of the court was objected to.

There were some facts established with reasonable certainty, to wit, that the train was moving and had gone about a car's length when plaintiff got to it and reached up to get

on; that it started with a jerk, and increased its speed rapidly after starting; that plaintiff went along with the car, holding to the railing, trying to get up, and was thrown from the car in crossing a ditch, about fifty or sixty feet from the place where he reached the car; that a man (by the name of Shed) ran before him, and got up at the entrance, and reached back, and tried to help the plaintiff get up; and that the bell was ringing just after the train started, being certainly heard after the jerk in starting. A pass-ticket was found on the the person of plaintiff after he was hurt.

The court charged the jury, in effect, that the defendant was guilty of negligence in the management of the train, if the conductor, after stopping a very short space of time, gave the signal of departure, and, at the same instant of giving said signal, caused the train to move, and plaintiff was injured by the force and moving of the train while he was attempting to get in the car. From this it is evident, that the judge regarded the signal stated in the petition and spoken of by the witnesses, as an invitation to passengers to get into the cars, and the wrong done was in not giving time afterwards for them to do so before moving the train.

In defining the rules of law applicable to contributive negligence, the court presented three distinct combinations of fact, having reference to the speed at which the train was running when the plaintiff reached it and made the attempt to get on; that is, that it would be contributive negligence, if the plaintiff attempted to get on when it was running rapidly; it would not, if the train had begun to move slowly; but if the train had begun to move, and after it had started to leave said station, and when it was under way, and plaintiff was not induced to get on the train by the invitation or conduct of the managers of the train, then it was a question for the jury to determine, whether his attempting to get on the train was culpable negligence or not.

The court determined, as matter of law, that the fact of starting the train instantly, upon giving the signal of depart-

ure, was an act of negligence or misconduct on the part of defendant, and that the act of attempting to get on a train, moving rapidly, was negligence on the part of plaintiff; but, if the train was moving slowly, it would not be an act of negligence on the part of plaintiff.

The issues before the jury, arising upon the pleadings and evidence, were: First. Had the plaintiff proved, to their satisfaction, the facts alleged in the petition to have been done by the defendant? Second. Had the plaintiff shown that such acts, so done, amounted to a breach of duty, or wrong to the plaintiff, so as to make them negligent or wrongful? And, third. Had the plaintiff shown that such neglectful or wrongful acts caused the injury alleged? The answer of the jury to these questions, by a general verdict, is yes or no. Now, can the court tell the jury that the plaintiff has proved, by certain witnesses, satisfactorily, that the cars were moving slowly, when plaintiff reached them to get on, and that they were started at the instant of giving the signal for departure? This the court did not do, because it would be assuming to direct the jury as to what conclusion they should arrive at as to the weight of the evidence before them. Can the court, with any better reason, tell the jury that such acts, if established, constituted a breach of duty, or wrong to plaintiff, on the part of defendant? This the court did charge, in substance, and, in doing so, assumed to know, and declare as matter of law, that moving the train at the instant of giving the signal of departure was a breach of duty, or a wrongful or negligent act, on the part of the defendant. But it does more. It assumes to be a matter of law, that the act of attempting to get on the train, moving slowly, under such circumstances, would not be an act of contributive negligence on the part of the plaintiff. This charge decided for the jury the whole of the facts of negligence against the defendant, in the management of the train, and in the effort of plaintiff to get on it, if they should be satisfied, from the evi-

dence, that the other facts were established as stated in the charge.

Negligence, in one sense, is a quality, attaching to acts dependent upon, and arising out of, the duties and relations of the parties concerned, and is as much a fact to be found by the jury, as the alleged acts to which it attaches, by virtue of such duties and relations. If a law can be found which declares, that it is the duty of the conductor of a train to give a signal of departure, and then wait a reasonable time for passengers to get into the cars before moving the train, the court can declare, as matter of law, that the simultaneous giving the signal and moving the train is an act of negligence, in reference to one who sustains the relation of a passenger, who has not been allowed a reasonable time, after the signal is given, to get upon the train. So, too, if a law can be found which declares, that it shall not be deemed an act of negligence to attempt to get upon a train, while moving slowly, if it has been started at the same time the signal of departure is given, the court may so tell the jury; and, in their finding of the acts to which such legal consequences attach, they will also find the fact of negligence in the one case, and the absence of it in the other. In the absence of any such law, defining the acts which constitute negligence, it is fact to be found by the jury, upon evidence, as any other material fact.

This will suffice to indicate the exact point to be considered in this opinion.

We are of opinion that the charge of the court is erroneous, in instructing the jury as if such laws did exist as applicable to this case, and in thereby relieving the jury from finding the fact of negligence, both as to plaintiff and as to defendant, in the matters mentioned, relating to each one respectively.

It has long been the settled policy of the laws of this State, to keep separate and distinct, and to define accurately, the respective functions of the judge and of the jury in the trial

of cases, both civil and criminal.  As early as 1853, the Legislature, in pursuance of this policy, enacted a law, that is still in force, which indicates a radical departure from the mode of proceeding in trials, as practiced in the courts of England and of many if not most of the American States, wherein the common law prevails.  It is as follows : The judge "shall not in any case, civil or criminal, charge or comment on the weight of evidence.  He shall so frame his charge as to submit questions of fact solely to the decision of the jury, deciding on and instructing them as to the law arising on the facts, distinctly separating the questions of law from questions of fact.  He shall not charge or instruct the jury in any case, unless the charge shall have been by him first reduced to writing and signed, and every such charge shall be given in the precise words in which it shall have been written."  (Paschal's Dig., art. 1464.)  This is mandatory and peremptory. It leaves no discretion to the judge, as to whether or not he shall " charge or comment on the weight of evidence," or as to whether or not he shall " submit questions of fact solely to the jury."  It is a positive direction to a judge as to what he shall do in the trial of a case in his court, however different may be the mode of trying cases in the courts of other countries, of which he may be informed by law-writers or by precedents.  This is our system of procedure.  The judge is forbidden by law either to aid a jury, or to infringe upon their province in weighing the evidence or in deciding upon the facts, in every case submitted to them.  It presupposes that the jury is as competent to find the facts as the judge is to declare the law.  This admits of no exception, so far as his duty, enjoined by law, is concerned, whether the facts are plainly established by the evidence, for one side or the other, or are complicated or doubtful.  It has been held by this court that the District Court had no right to order a nonsuit in any case for want of sufficient evidence.

A demurrer to evidence, though it has been sanctioned, may be said to be almost obsolete in our practice.  The

judge's power to control the result of a case, in reference to the facts, is upon a motion for a new trial, when the proper objection to the verdict of the jury is made for that purpose.

Notwithstanding this policy of the law, so rigidly enjoined, it does not follow that every departure from the prescribed rule will authorize this court to reverse the case in which it occurs. It would be an error of law; but to require a reversal in this court, it must be a material error, to the prejudice of the party complaining of it. A case may be made out so plainly on one side, or may be so clearly defective in the evidence to sustain it, that although the court directed the jury to find a verdict, and how to find it, it would not be a material error, to the prejudice of the party cast in the suit, for which this court would be required to reverse the judgment on that account. (Lea *v.* Hernandez, 10 Tex., 137.)

So in a case like the present, the acts of negligence on the part of the plaintiff or defendant might be of a character so extreme, and so indisputably established by uncontroverted evidence, direct, and not conflicting, that if the court departed from the prescribed rule, in telling the jury that such acts amounted to negligence, it might be that this court could determine that such a charge had not been prejudicial to the rights of the party complaining of it, which would certainly be necessary to sustain such a charge.

Ch. J. Cooley, in a very able and searching review of the cases upon the subject of contributive negligence, says that " negligence consists in a want of that reasonable care which would be exercised by a person of ordinary prudence, under all existing circumstances, in view of the probable danger of injury."

"As a general rule, it cannot be doubted that the question of negligence is a question of fact, and not of law." And while admitting that there are plain cases, in which it has been held that the judge may rightfully instruct the jury, as matter of law, that the action cannot be maintained, he says: "The case, however, must be a very clear one, which would justify

the court in taking upon itself this responsibility." " But while there is any uncertainty, it remains a matter of fact for the consideration of the jury."

The court, in taking this responsibility, must assume to be the judge of the proper standard of ordinary prudence, which would likely be different with different judges; and each judge would make his standard of prudence the law of the case, and thereby the law would change with a change of judges, who might be called upon to administer it. It is only necessary to examine the numerous reported cases to see the different opinions of different judges upon the subject. In Massachusetts, for instance, it is held, as matter of law, that the attempt to get on a moving train is *prima facie* contributive negligence. (Harvey *v.* E. R. Co., 116 Mass., 269.)

In Pennsylvania, in a similar case, the court below charged the jury, that " if the train was distinctly running on the track when the plaintiff attempted to enter, he was guilty of negligence, and cannot recover." It was held to be error; and the Supreme Court said, "it was for the jury to say whether the danger of boarding the train, when in motion, was so apparent as to make it the duty of the passenger to desist from the attempt." (Johnson *v.* The W. C. & P. R. R. Co., 70 Penn., 357.)

The same diversity of opinion may be found to prevail upon nearly ever fact relating to the subject of negligence, in the different courts of the different States of the Union. It must be considered also that no two cases ever came into court with exactly the same combination of circumstances, and that every new case must present some shade of difference from every other, in its facts. Must we now, in the inception of our adjudications upon this subject, start out in the search through the thousands of reported cases, to find the opinions of judges, as to the common and ordinary standard of prudence, in reference to every act, and every combination of acts relating to negligence, or shall we follow the plain command of our own statute, by submitting to the decision of

the jury, as the sole judges thereof, the fact of negligence as well as all other facts in every case? This question is easily answered.

By our general laws, relating to railroads, certain duties are imposed upon companies running passenger and freight trains upon their roads, such as posting up signs where common roads cross the track, badges worn by certain officers, giving notice of time of running cars, receiving and transporting passengers and freight, when presented a reasonable time previous to starting from the stations, ringing a bell or blowing a whistle in passing roads and streets, providing brakes and careful brakemen, stopping at the stations five minutes, the breach of which duties so prescribed, may be declared, as matter of law, to be wrongful or negligent, when the acts constituting the breach of duty may affect any one injuriously. Railroad companies may also make reasonable regulations of their own for the management and running of their trains, or they may follow general customs in such management and running; which, when established, known, and acted on by the public, may impose upon the companies duties in reference to others, a breach of which, to their injury, might render such companies liable to damages. The facts involved in such regulations and customs, upon which duties would arise, not being matters known to the court, would have to be proved as other facts, where a breach of such duties might become the subject-matter of a suit for damages.

It is presumed that in this case the company had some regulation, or was governed uniformly by some custom in the mode of receiving passengers, and in stopping and in starting their trains, in reference to that purpose. Whether it was regulated by the length of time during which the trains stopped, or by ringing a bell or by blowing a whistle, or by a vocal announcement, is not shown in the evidence. The object of ringing the bell, as spoken of by the witnesses, was not explained. Nor was it shown whether or not it was customary for ordinarily prudent men to attempt to get upon

the train while it was moving; nor under what state of circumstances it would be an act of imprudence to attempt it. With such evidence before the jury, they might have been properly able to decide the facts of negligence, both of the company and of the plaintiff, as it was certainly their province to have done in this case.

Believing the charge to have been materially erroneous, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

While I do not approve of all of the views expressed by the Chief Justice in his opinion in this case, I fully concur in his conclusion, and agree that the judgment should be reversed.

GEORGE F. MOORE,

Associate Justice.