GALVESTON, HOUSTON & NORTHERN RAILWAY COMPANY v. W. W. COCHRAN.

Decided March 19, 1908.

**1.—Fellow Servants—Statute.**

A hostler who had direction at night of the work connected with a railway roundhouse, under orders of the roundhouse foreman, who was present only during the day, and was injured while inspecting an engine by the negligence of helpers under his charge in moving a locomotive upon the tracks without ringing the bell, doing this for the purpose of firing up a switch engine for work in the yards, was engaged in the same service with the negligent servants, but was not in the same grade of employment, nor doing the same character of work, nor working together at the same piece of work at the same time and place and to a common purpose. They were not his fellow servants within the meaning of article 4560g, Revised Statutes, and he could recover from the railway company for his injury by their negligence.

**2.—Cases Distinguished.**

Long v. Chicago, R. I. & T. Ry. Co., 94 Texas, 58, followed. Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 513, and Cloyd v. Galveston, H. & S. A. Ry. Co., 37 Texas Civ. App., 506, distinguished.

**3.—Negligence—Proximate Cause.**

Injury to an employe at work in his duties about the tracks in railroad yards, by moving an engine without giving the signals by ringing the bell, which were customary in such case, was not too remote to have been within the contemplation of the persons putting it in motion.

**4.—Charge—Harmless Error.**

The use of the plural instead of the singular, in referring to the one servant of defendant whose negligence was shown to have caused plaintiff's injury, held not liable to mislead.

**5.—Same—Contributory Negligence.**

The omission of the condition of plaintiff's freedom from contributory negligence in stating an hypothesis on which he might recover was harmless error where the charge as a whole so presented that defense that it was not liable to mislead.

Appeal from the District Court of Harris County.  Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for appellant.—When a person employed as hostler has charge and control of the care and preparation of locomotives in a given yard, with the authority and duty to perform such services in person and with the aid of an assistant, or helper, who is subject to his orders and directions; and such hostler, in the course of this

employment, while engaged himself in the preparation of a locomotive, but without operating it, is injured through the negligence of such assistant or helper while moving another locomotive against that which is being prepared by the hostler, the relation of the assistant, or helper, to the injured party is that of fellow servant, within the meaning of the laws of Texas, and the employer, under such circumstances, is not liable to the injured party. Cloyd v. Galveston, H. & S. A. Ry. Co., 37 Texas Civ. App., 506; Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 513; Gulf, C. & S. F. Ry. Co. v. Warner, 89 Texas, 479; Moore v. Jones, 15 Texas Civ. App., 393; Medberry v. Railway Co. (Wis.), 81 N. W., 659.

The test of actionable negligence applicable to the facts of this case is whether an ordinarily prudent person, in the situation of Lehman, would reasonably have foreseen the injury as likely to ensue as result of backing the locomotive. Texas & P. Ry. Co. v. Bigham, 90 Texas, 225; Texas & P. Ry. Co. v. Reed, 88 Texas, 448; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 279; 16 Am. & Eng. Enc. Law, 436.

When the evidence of negligence on the part of defendant relates to the conduct of a particular servant, and no others, it is error for the court, by its charge to authorize recovery on the hypothesis of negligence on the part of other servants, or servants generally. Such a charge is not supported by the evidence, and is calculated to mislead and confuse the jury. Ry. Co. v. Platzer, 73 Texas, 121; Railway Co. v. Wisenor, 66 Texas, 675; Railway Co. v. Gilmore, 62 Texas, 392; Railway Co. v. Blohn, 73 Texas, 637; Railway Co. v. Faber, 63 Texas, 344; Railway Co. v. Harriett, 80 Texas, 73.

A charge in a negligence case, complete in itself, which authorizes recovery in the event of finding negligence on the part of defendant in certain alleged particulars, and without submitting or requiring a finding on the issue of contributory negligence, such issue being raised by the pleading of defendant and the evidence, is erroneous. Railway Co. v. Kauffman, 101 S. W., 817; Railway Co. v. Dean, 76 Texas, 74; Murray v. Railway Co., 73 Texas, 7; Railway Co. v. Bracken, 59 Texas, 73.

*John Lovejoy* and *J. W. Parker*, for appellee.—Plaintiff and the said Lehman were not in the same grade of employment, and were not doing the same character of work or service, and were not working together at the same time and place and at the same piece of work and to a common purpose, and were not therefore fellow servants. Sayles' Texas Civil Statutes, art. 4568h; Long v. Chicago, R. I. & T. Ry. Co., 94 Texas, 58-61; Sherman v. Texas & N. O. Ry. Co., 99 Texas, 571, 91 S. W., 561, 562; International & G. N. Ry. Co. v. Still, 101 S. W., 444, 445; Missouri, K. & T. Ry. Co. v. Hutchens, 80 S. W., 415, 416.

It certainly can not be said, as matter of law, that the injury of plaintiff should not have been foreseen by a person of ordinary prudence as a result of backing the locomotive against the stationary one without giving notice or warning, and it was in this view the court submitted the case to the jury. Railway v. Kellogg, 4 Otto,

469; Railway v. Mussette, 86 Texas, 719; Railway v. Hayter, 93 Texas, 242; Railway v. Bigham, 90 Texas, 225; Railway v. Murphy, 46 Texas, 366.

LEVY, ASSOCIATE JUSTICE.—Appellee brought this suit against appellant on account of personal injuries alleged to have been inflicted upon him while he was in the employment of the railway company, in its roundhouse yard in the city of Galveston, in the capacity of an hostler.

The case was tried to a jury, and upon the verdict a judgment was rendered thereon in favor of appellee; from which judgment the railway company has appealed.

The evidence in the case shows and establishes the following facts: On and prior to the date of the alleged injury, March 30, 1904, the appellant railway company maintained a yard in the city of Galveston, one of the termini of its railroad, at which switch engines and road engines while not in actual use were kept on the side tracks constructed for the purpose, and were cleaned, fired up, provided with sand, fuel and water, oiled, wiped and inspected, and turned and dispatched to the main line. There was no regular roundhouse building; the sidings served the purpose of a roundhouse. The roundhouse yard, called "roundhouse," covered an area to the extent of one hundred feet wide by one hundred and fifty feet long, and there were five tracks maintained and used on this space, denominated the main line, runaround, and spur, and the turntable track, and another track for general purposes not denominated. At this roundhouse there was located a pit over which locomotives out of repair were placed for temporary repairs, and also there was located a tank from which water was procured for use in the engines and generally, and ordinarily a car full of sand was stationed there. In order to perform all the work and services required in connection with the roundhouse yard, the appellant company employed a roundhouse or yard foreman who had general charge and supervision over this yard and the work to be performed in it, and there were other men employed by appellant there who were divided into day and night shifts. The work in the yard was run day and night. The work and conduct of the yard at night is dealt with by the evidence in this case. McLaren, the roundhouse or yard foreman, was present at the yard during the daytime, and gave directly such special instructions as were necessary in the performance of the work in the roundhouse or yard. During the night McLaren was not personally present at the roundhouse or yard, but would furnish the night hostler with written memoranda of matters to be looked after at night, and give instructions of what was to be done, and it was the duty of the hostler and the other employes to follow them. McLaren, the foreman, had power to direct the work at night and was the immediate superior officer over the night hostler and the other employes there at work. Butler was the hostler in the daytime, and McLaren was his immediate superior officer. Appellee was night hostler. The duties he was employed to perform as hostler, in a general way,

were to turn engines when they came in the yard and to see that they got fuel and sand and water and were oiled and wiped and dispatched on the road. There were employed by appellant nine other men in this night work at the yard, to help appellee do the work. The duties of these men who helped appellee were various; some of them turned engines; others wiped engines; others oiled, watered and put sand in the engines. The number of road engines in the yard at night varied, but averaged five at night, besides the switch engines. Usually three switch engines were kept running at night. When road engines came in off the road they would be placed in the yard, and oiled and wiped; and when necessary to be turned around, the engine would be moved over the main line track to the turntable track; and when the road engine was to be dispatched, it was given fuel and water and sand. When an engine was to be moved for water it required at least two men to operate it; to give it sand it required several, usually three to four; to turn the engine on the turntable it required the whole crew. To take the engine to the water tank when it had steam up, the two men required would fill the positions as follows: One would occupy the engineer's place, to "spot" the engine, and one would pull down the water spout and give it water. If the engine to be watered did not have steam up, then a switch engine would be coupled to it, and the engine pulled to the tank. In this operation two men would be used as indicated, one to control the movements of the engine, and the other to couple and pull down the spout. These helpers were subject to the orders of appellee, although, being familiar with the general and customary duties about the yard, they usually went about the performance of their work without specific directions and orders from appellee. When McLaren, the foreman, gave the helpers specific directions he would inform appellee that he had done so. If particular matters were to be looked after at night which the foreman, McLaren, could not have anticipated, appellee had authority and direction over its performance. Appellee had at the time of his injury been working in the yard about three or four months, and was familiar with the operations in the yard, and knew what duties and how they were to be performed by the employes.

On the occasion in question, upon leaving the roundhouse yard at the usual evening hour the yard foreman, McLaren, gave appellee, who had commenced his work for the night, the following written instructions of specific work which was to be performed by him during the night:

"Mr. Cochran: Work engine 48 tonight, and 41, 45, 48 in A. M. Have engine 41 wiped good; eng. 691 not ordered, look out for them. Eng. 609 O. K. Think they will run 182, but you will have to find out about that; don't let any of the men bother with the new light; have eng. 48 over pit in A. M. unless eng. on 185 gets in, then put her over pit.          Yours truly,          R. B. McLaren."

The appellee, in furtherance of the written directions given him by McLaren, shortly after he went on duty directed three of the night

helpers to go and wipe engine 41, which was a switch engine, standing in the yard without steam in it, termed a "dead engine;" and about seven o'clock in the night appellee instructed Lehman to fire up one of the switch engines named in the memorandum of work given by McLaren, to be ready for service in the morning. The testimony is conflicting as to which switch engine was designated; the appellee says 41, and Lehman says 46; no time was directed in which Lehman was to fire up the engine. The location and situation of the engines in question are set forth as follows: About six feet east of the switch engine 41, and on the same track, stood road engine 627, which had previous to the hour of ten o'clock been steamed up to later on go out on the road, but had no cars attached, and the headlight was not yet lighted. Engine 46 was another switch engine standing at the time on a separate side track parallel and opposite to the one occupied by 41, though 46 was a little further west than 41. 41 was a "dead engine," or with no steam in it; 46 had steam in it, though reduced. At about ten o'clock the helpers who were instructed to wipe 41 reported to appellee, who was at the "office," that they had finished the work. Appellee upon receiving the report went to the position of 41 for the purpose of inspecting it to see if the work was properly done, which was his custom of doing. In the meantime Lehman, accompanied by Herman, another helper, had gone to the yard to steam up the switch engine. Appellee did not know of Lehman's and Herman's whereabouts or work at the time, neither did Lehman and Herman know of appellee's whereabouts or work at the time. Upon arriving at 41 appellee began inspection of the engine and of the work done on it. Lehman and Herman at the time they arrived undertook to steam up 46, which Lehman asserted was "dead." To accomplish the purpose Lehman determined to move road engine 627 backward until it should be opposite 46, which was on the parallel track, and in this position to transfer steam to 46 by means of a rubber hose; in bringing about which relative positions of the engines it was necessary for road engine 627, while backing, to come in contact with engine 41, and thus move 41 backward a few feet. For this purpose Lehman got in the cab of engine 627 and caused it to back towards 41. At the time Lehman backed 627 appellee was facing 41 with his back towards 627, and on the track between the two engines, holding his lantern to the side of 41 to throw light under it while he was inspecting its condition and the wiping. Appellee had been stooping down and bending forward inspecting the engine, and putting the lantern near the center of the engine underneath to see under it, and had been in motion under and around the engine. When 627 was backed by Lehman appellee was caught between the front part of 41 and the tender of 627, and injured as complained of in the petition. Lehman did not cause the bell to be rung while he was backing up. Appellee could not hear the men on the engine because of the noise of the blow arising from the escape of the draught employed to burn the oil fuel in 627. Appellee did not know of the presence of either Lehman or Herman, nor did Herman or Lehman know of the presence or position of appellee until he cried out from his injury. Leh-

man and Herman came to the work together, but appellee did not come with them or know they were coming, either singly or together, at the time for the work. Appellee proved that it was a rule of the company then in force applicable to this yard, that the engine bell be rung before moving the engine, and that it was customary to do so. In the conflict in the evidence as to which engine Lehman was instructed to fire up, we assume the correctness of the finding involved in the general findings by the jury, that it was engine 41 which he had been instructed to fire up previously in the night, and not 46. The evidence establishes negligence of Lehman in moving the engine, proximately causing the injuries of appellee, and that appellee was not guilty of contributory negligence.

*After Stating the Facts.*—Appellant's first and second assignments of error are considered together. The court in the main charge to the jury gave the instruction which reads: "The plaintiff was not, under the circumstances and in contemplation of law, a fellow servant of the employe who moved the engine." The giving of this instruction is complained of as error.

The question presented for decision in the case as raised under the two assignments is as to whether appellee and Lehman, whose act of setting the engine in motion thus causing the injury to appellee, were fellow servants within the meaning of the law of Texas.

According to the evidence, the appellee at the time of his injury was not engaged in the operation of a locomotive, within the meaning of the statute. Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 513. The question next must be considered under art. 4560g, Rev. Stat., which reads:

"All persons who are engaged in the common service of such person, receiver or corporation controlling or operating a railroad or street railway, and who while so employed are in the same grade of employment and are doing the same character of work or service and are working together at the same time and place and at the same piece of work and to a common purpose, are fellow servants with each other. Employes who do not come within the provisions of this section shall not be considered fellow servants."

The evidence in the case shows that the work or service that appellee was doing at the very time of the injury and preceding his injury was that of inspection or examination to see that the stationary switch engine 41 had been properly wiped. The work that Lehman was doing at the time and preceding the injury to the appellee was that of firing up or putting steam into stationary switch engine 46, standing on an adjacent track. Lehman, to accomplish the purpose of firing up or getting up steam on 46, which was a different and separate engine and on another track, used and operated a locomotive on another track. The means employed by the appellee to accomplish the purpose of inspection of completed work, were entirely different from the means employed by Lehman to accomplish the purpose of his work begun. The character of the work the two men were doing was not similar but entirely dissimilar. The work appellee was doing at the time had nothing to do with the

work that Lehman was doing, and the work in hand at the time of the injury that Lehman was doing, either operating 627 or putting steam in 46, had nothing to do with the work the appellee was doing. They were working apart and not together, each without the aid of the other in the work then being done, and were engaged upon a different piece of work. The work of appellee at the time neither required the use of steam or the movement of a locomotive. The work of Lehman at the time required the use of steam and the movement of a locomotive, and which locomotive was a different one and other than that which appellee at the time had any connection with. In other words, appellee at the time of the injury was not engaged in operating the locomotive that Lehman was, or engaged upon the same piece of work that Lehman was, but was engaged at an entirely different piece of work from Lehman, and to a different purpose. The conclusion from the evidence is, that both appellee and Lehman were engaged in the same common service, but at the time of the injury were not in the same grade of employment and were not doing the same character of work and were not working together at the same piece of work at the same time and place and to a common purpose.

In the light of the decisions in this State construing the statute defining fellow servants, we are of the opinion that under the evidence in this case the court did not err in giving the charge complained of. We think the case of Long v. Chicago, R. I. & T. Ry. Co., 94 Texas, 58, rules this case. In the Long case the work immediately at hand when the injury was inflicted, was the carrying of the tools to the tool house by the section hands. For the accomplishment of the purpose some employes were using a handcar, while others, including plaintiff, were merely carrying them by hand. Through the negligence of those operating the handcar the plaintiff was run down and injured. Because the means employed by those upon the handcar carrying the tools were so distinctly different from the means employed by the others, and because each employe was carrying the tools without the aid of each other, it was decided that at the very time of the injury the plaintiff and those operating the car were engaged in a different character of work and in a different piece of work, and that plaintiff was not a fellow servant with those upon the handcar, within the meaning of the statute.

The case of Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 513, is distinguishable from the instant case on the facts. There the two engines were coupled together, called a "double header," and were taken charge of by the two assistants and were then started back to the roundhouse. About this time Howard left the roundhouse, going in the direction of the engines to take charge of them and run them to the roundhouse. Because at the very time of the injury the three were doing the same character of work and employing the same means, and were working together at the same time and place with the aid of each other, operating the same locomotives, and to the common purpose of taking the same locomotives to the roundhouse, they were held to be fellow servants one with the other. The same difference involved and applied in the Howard case is defined

in the previous expression of the court in the Long case, wherein it said: "If the injury had been inflicted by one of the employes working the handcar, upon another who was then engaged in operating the same car, it should be held that they were engaged upon the same piece of work." The case of Cloyd v. Galveston, H. & S. A. Ry. Co., 37 Texas Civ. App., 506, relied on by appellant, is distinguishable on the facts from the instant case. There Cloyd was under the engine engaged in wiping a link, and Escamilla was in the cab of the same engine, and while engaged at work in the cab in some way moved the reverse lever, which caused the links to fly up and strike Cloyd. Because the men were engaged at the very time of the injury in cleaning and preparing the same engine for the road, it was held that they were engaged in the same character of work with the aid of each other, with the common purpose of wiping, at the same time and place, around the same engine, which was the same piece of work. In the case of International & G. N. Ry. Co. v. Still, 100 Texas, 499, the bridge gang were to repair a platform, and in performing the work it was necessary to remove some bales of cotton from a portion of the platform that was to be repaired to another part upon which the repairs had already been made. The men were all working together in removing the cotton, without any particular part to be accomplished by one or more without connection with the others. Still and another were rolling one bale, and behind him two other employes were rolling another bale. The latter rolled the bale of cotton on Still, injuring him. Because the employes were all working together removing the cotton at the same time and place, without any particular part to be accomplished by one or more without connection with the others, it was held that at the very time of the injury they were all working at the "same piece of work," within the meaning of the statute.

A further feature of this case is that appellee was performing a work specially directed to be done by his superior officer, McLaren, whose directions it was his duty to obey.

The third and fourth assignments of error are overruled. The evidence shows that the several employes in the yard where appellee was injured had duties to perform around and about and upon stationary locomotives, and that it was appellee's duty to inspect switch engine 41 after the same had been wiped, and that he was in the performance of that duty when injured by the backing of the other locomotive, and that it was not usual and customary to set a locomotive in motion under the circumstances Lehman did without giving some character of warning. In such case we can not say as a matter of law that the injury of appellee could not have been foreseen by a person of ordinary prudence as a result of backing the locomotive against the stationary one without giving notice or warning. The contention presents the issue of proximate cause. Mexican Natl. Ry. Co. v. Mussette, 86 Texas, 719; Texas & P. Ry. Co. v. Bigham, 90 Texas, 225; Texas & P. Ry. Co. v. Murphy, 46 Texas, 356.

The fifth assignment complains of the sixth paragraph of the charge on the ground that the court referred in the plural, instead of the singular, to the servant in charge of the locomotive which caused

appellee's injury. The jury could not have been misled by the use of the plural, from the fact that the evidence conclusively showed that Lehman was the only person in charge of the engine; and the jury must have understood that the court had reference to him. The court, in a previous paragraph, in submitting the facts which the jury were required to find before they could return a verdict for plaintiff, correctly referred to the servant in charge of the locomotive. Therefore the jury, as a condition to finding for plaintiff, were required to find that the particular servant upon whose conduct the plaintiff's right of action was predicated was negligent. The assignment is overruled.

The sixth assignment of error complains of the ninth paragraph of the court's charge, on the ground that it did not submit it to the jury, as a condition to appellee's right to recover, that they find that appellee was free from contributory negligence. The charge is to be construed as a whole, and in doing so the jury could not have failed to understand that if they believed appellee was guilty of contributory negligence they should find a verdict for the appellant. Galveston, H. & N. Ry. Co. v. Morrison, 46 Texas Civ. App., 186; Missouri, K. & T. Ry. Co. v. Parrott, 100 Texas, 9.

The seventh and eighth assignments are overruled. The court correctly refused the special charges. There was no evidence tending to sustain the facts submitted in the special charges. The charge, properly construed as a whole, appropriately applied the law to both sides of the case. Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 350; Peck v. Peck, 99 Texas, 10.

The case is ordered affirmed.

*Affirmed.*

Writ of error refused.