BEAUMONT, S. L. & W. RY. CO. v. MYRICK. (No. 400.) *

(Court of Civil Appeals of Texas. Beaumont. Jan. 22, 1919. Rehearing Denied Feb. 12, 1919.)

1. RAILROADS ☞327(1)—DUTY OF TRAVELER AT CROSSING—DUTY TO LOOK AND LISTEN.

One approaching railroad crossing is required, in the exercise of ordinary care, to look and listen for approaching train before attempting to cross track.

2. NEGLIGENCE ☞136(26) — DIRECTED VERDICT—CONTRIBUTORY NEGLIGENCE.

In negligence action court will direct verdict for defendant where evidence in its entirety is such that fair and reasonable minds could reach no conclusion but that plaintiff was contributorily negligent.

3. RAILROADS ☞350(16) — CROSSING ACCIDENT—FAILURE TO LOOK AND LISTEN—JURY QUESTION.

In automobile driver's action against railroad for injuries at crossing, whether automobile driver was contributorily negligent in failing to look and listen before crossing track held, under the evidence, for the jury.

4. RAILROADS ☞348(8)—CROSSING ACCIDENT—FAILURE TO LOOK AND LISTEN—EVIDENCE.

Evidence held to sustain finding that automobile driver injured in train collision at railroad crossing was not contributorily negligent by failing to look and listen before attempting to cross track.

5. TRIAL ☞203(1)—INSTRUCTIONS—ISSUES.

Where court's general charge fails to adequately instruct jury concerning vital principles affecting issues, it is the privilege of a litigant to request and have given a correct charge covering such matters.

6. TRIAL ☞260(1) — INSTRUCTIONS — REQUESTS.

Refusal of requested instruction substantially covered by main charge is not error.

7. DAMAGES ☞113 — DAMAGE TO AUTOMOBILE.

The true measure of damages for injury to automobile was the difference in the market value of the automobile immediately before and immediately after the accident.

8. EVIDENCE ☞93 — BURDEN OF PROOF — FACTS IN KNOWLEDGE OF DEFENDANT.

In action for injuries to automobile in crossing accident, where there was undisputed evidence that railroad took charge of automobile and refused permission to examine car and ascertain damage, and there was no evidence as to what railroad did with car or its value or condition after injury, plaintiff will not be held to strict proof as to market value after accident; the railroad being the only one in position to give exact information.

9. APPEAL AND ERROR ☞1060(1)—REVIEW—HARMLESS ERROR—ARGUMENT OF COUNSEL.

In negligence action, remarks by plaintiff's counsel as to injustice of contributory negligence law, although improper, was not of such inflammatory character as to warrant reversal of judgment for plaintiff.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Horace Myrick against the Beaumont, Sour Lake & Western Railway Company and another. Judgment for plaintiff against defendant named, and defendant named appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, and Oliver J. Todd, of Beaumont, for appellant.

Jas. A. Harrison, of Beaumont, for appellee.

HIGHTOWER, C. J. This appeal is from a judgment of the district court of Jefferson county, wherein the appellee, Horace Myrick, was plaintiff, and Beaumont, Sour Lake & Western Railway Company and Frank Andrews, receiver of said railway company, were defendants. The judgment in favor of appellee, Myrick, was against the railway company alone, and that company alone is appellant here.

Substantially stated, the appellee alleged that while crossing over appellant's railway track at a certain public crossing known as the McLean crossing on the China road, about four miles distant from the city of Beaumont, appellee's automobile, in which he was riding at the time, was struck by one of appellant's passenger trains, and that, in consequence of such collision, appellee sustained personal injuries, and that his automobile was also damaged.

Appellee alleged, substantially, that appellant was guilty of negligence in several respects, but the only allegation of negligence submitted for the consideration of the jury was the alleged failure on the part of appellant to give the'statutory signals on approaching said crossing, by blowing the whistle on the engine and ringing the bell, as required by the statute.

Appellant, after general demurrer and general denial, answered by specific pleas of contributory negligence on the part of appellee.

The case was submitted to the jury upon special issues, and judgment was entered in favor of appellee upon the answers of the jury to the special issues submitted, in the sum of $1,800; $1,500 being for personal injuries sustained by him, and $300 as damages to his automobile. The jury found that appellant was guilty of negligence in that it failed to give the statutory signals by whistle and by ringing the bell, and further found that such negligence on the part of appellant was the direct and proximate cause of the collision between appellant's train and appellee's automobile, and his injuries and damage consequent thereupon. There are several assignments of error found in appellant's brief, the first assignment being to the effect that the trial court was in error in refusing to peremptorily instruct a verdict in favor of appellant as it requested the court to do, upon conclusion of the evidence. By this assignment, it is contended that the appellee was, as a matter of law, guilty of contributory negligence, as pleaded by appellant. The proposition of law following this assignment is as follows:

"Since one approaching a railway crossing in an automobile is required by law to keep a reasonable and open lookout for approaching trains, and to otherwise exercise ordinary care, in order to protect himself from danger at such crossing, when such person sustains injury and sues for damages on account thereof, he does not make a prima facie case for the jury if it appears from the undisputed evidence that he wholly failed to exercise that degree of care required by law."

[1] It is, unquestionably, now well settled by the decisions of this state that a traveler on a highway approaching a railroad crossing is required to use ordinary care in order to protect himself from danger of a collision with a train at such crossing, and, when such traveler sustains injuries at such a crossing and sues for damages on account thereof, he does not make out a prima facie case for the jury if it appears from the undisputed evidence that he wholly failed to exercise such degree of care. At the time of the accident in question, there was no statute of this state specifying what a traveler on a highway should do or should not do on approaching a railroad crossing, but our Supreme Court announced the rule long ago that such a traveler must use ordinary care for his own protection before attempting to make such crossing, and in the nature of things such ordinary care could only be exercised by the use of the senses of seeing and hearing, and therefore our appellate courts have frequently said that such a traveler, on approaching a railroad crossing, in order to be within the exercise of ordinary care, should look out or listen, or perhaps sometimes do both, for trains approaching said crossing, before attempting to make the same. This rule is so well established that it needs no comment or discussion at our hands, and it is so well understood by the profession that the citation of authorities would be superfluous.

[2] The question for decision in this case is whether the state of the evidence was such that the trial court would have been warranted in taking the case from the jury, as requested by appellant, and, if we should determine this question in appellant's favor, we should have to hold that the evidence, in its entirety, was such that fair and reasonable minds could have reached no other conclusion than that the appellee, before going on appellant's crossing, failed to use such care as an ordinarily prudent person under the same or similar circumstances would have used, by looking or listening, or by both, to ascertain the approach of a train to such crossing. Appellant earnestly insists that this court should so hold. Appellant's brief in this case reflects an energetic and thorough examination of the decisions of this and other states relative to the point here under consideration, and quite a number of them are quoted from and discussed in the brief. After a careful examination of the entire evidence in this case, however, we have reached the conclusion that the trial court would not have been warranted in peremptorily instructing a verdict in favor of appellant on the theory that appellee was, as a matter of law, guilty of contributory negligence, and therefore did not err in refusing to so instruct the jury.

[3, 4] We shall not attempt to set out at length the evidence in the record bearing upon this point, as it would serve no useful purpose, and our failure to do so cannot have the effect to deprive appellant of any right or advantage that it may have on writ of error to the Supreme Court. We simply conclude, as a fact, on this point, that the evidence, as shown by the record, bearing on the issue of appellee's contributory negligence, was

such as to require, not only the submission of that issue to the jury, but that such evidence is also sufficient to sustain the finding of the jury acquitting appellee of contributory negligence. Among other authorities cited by appellant on this proposition are the cases of Ry. Co. v. Edwards, 100 Tex. 23, 93 S. W. 106, and Railway Co. v. Ryon, 80 Tex. 59, 15 S. W. 588. This court readily agrees with the correctness of the rule as announced in each of those cases, but the evidence in this case is so materially different from the facts upon which the decisions in those cases rest that in our opinion they cannot control the disposition of this case. In the Edwards Case among other things, it was said:

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen; it being the function of the jury to say what precautions were called for by the particular situation. Those cases presented issues for the jury to determine as to whether or not the care taken was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken, and offering no excuse for its absence, except a reliance on the other party. In one of those cases this court took occasion to say, with reference to charging the jury: 'The rule given as to the degree of care required of deceased is recognized by former decisions of this court. [Railroad Co. v. Randall] 50 Tex. 254; [Railway Co. v. Cowser] 57 Tex. 302; [Railway Co. v. Waller] 56 Tex. 334; [Railway Co. v. Murphy] 46 Tex. 356 [26 Am. Rep. 272]; [Eames v. Railway Co.] 63 Tex. 660. Having given the proper rule to the jury, the judge had performed his duty unless, from the whole case as made by the testimony, the plaintiff had no testimony upon which the jury could reasonably have found a verdict in her favor; in which state of facts the court could have refused to submit the case to the jury. The plaintiff's case would fail from absence of testimony to any negligence on the part of defendant, or upon absence of any testimony upon which a jury could find due care or its equivalent, absence of negligence on the part of deceased.' Missouri Pac. Ry. Co. v. Lee, 70 Tex. 501 [7 S. W. 859]."

It is earnestly insisted in the brief of counsel for appellant that the Edwards Case ought to be decisive of their contention here; but it is manifest, from the language of the court in the Edwards Case, that the plaintiff in that case was held to be guilty of contributory negligence as a matter of law, for the reason that the proof was uncontradicted to the effect that he used no care whatever for his protection or safety by either looking or listening for an approaching train before going upon the crossing, but, on the contrary, the plaintiff in that case testified that he relied solely upon the presumption that the statutory signals would be given by a train approaching the crossing, which he claimed was not done. Therefore it was manifest and conclusive that the plaintiff in that case used no care whatever, as said by the court, and that he therefore was guilty of contributory negligence as a matter of law. In this case there is positive evidence on the part of the appellee, Myrick, that he looked twice for an approaching train while he was approaching the crossing in question, and that he saw no train, and there was also the positive evidence of his witness Pinchbeck, who was standing near the crossing looking in the direction from which appellee was coming, and saw appellee, at least one time, when in about 200 feet of the crossing, look back over his shoulder as if he were looking to see whether a train was approaching this crossing. There was also testimony, practically without dispute, to the effect that there was a tree which obstructed appellee's view of an approaching train after he had gotten within a distance of between 100 or 75 feet of the crossing. The record is also without dispute to the effect that appellant's train was some 30 or 40 minutes late, and was running at a speed of between 45 and 60 miles an hour, and that if it had been on time it would have been in Beaumont some 30 or 40 minutes before appellee reached this crossing. It was further shown that appellee was acquainted with the schedule of this train, and knew that according to its schedule it should have gone over this crossing 30 or 40 minutes sooner. The record also shows that, when appellee approached within about 75 feet of the crossing, he was then in a position for the first time to see a train coming in the opposite direction from Beaumont, and that his attention from the time he got within 75 feet of the crossing was given to a train that might be approaching from Beaumont. It is further shown by the record that the public road on which appellee was traveling does not cross appellant's track at right angles, but that the angle at which the road approaches appellant's track is such as to throw a train going in the direction of Beaumont practically in the rear of a traveler at said crossing going in the direction of Beaumont, as was the situation with appellee when he went over the crossing on this occasion. There are other facts and circumstances in this record, in addition to the few above mentioned, which would tend to support the finding of the jury that appellee was not guilty of neg-

ligence which proximately caused his injury; and, from the whole, we conclude that this court would not be warranted in sustaining this assignment, and it is therefore overruled.

What we have said, in effect, disposes of all assignments up to and including the seventh, and such assignments are all overruled.

By the eighth assignment, it is claimed that the trial court erred in refusing to give to the jury this special instruction requested by appellant:

"The court instructs you in this case that it is the duty of one approaching a railroad crossing in an automobile to exercise ordinary care under all the circumstances to determine whether or not he may cross with safety; and in this connection you are told that such duty to exercise ordinary care is an affirmative duty, and must be exercised without reference to any failure on the part of operatives of the train which causes an accident, to perform the duties incumbent upon them, and it is no excuse for failure to exercise ordinary care in approaching a crossing that the whistle of the locomotive was not blown or the bell thereof was not rung. These instructions you will bear in mind in passing upon the issues of contributory negligence submitted to you by the court."

The trial court, after correctly defining "negligence," "contributory negligence," and "proximate cause," further by its charge instructed the jury as follows:

"It is the duty under the law, of persons operating railway trains to exercise ordinary care in the operation thereof, under all the facts, circumstances, and surroundings, to avoid accidents and injuries to persons and vehicles crossing their tracks over roads or highways; and our laws require that the persons operating the engine of such train blow the whistle and ring the bell at a distance of at least 80 rods before reaching a crossing, and to keep the bell ringing until such crossing is passed, and their failure to do so is negligence.

"It is the duty under the law of persons approaching a railroad crossing to exercise ordinary care under all the circumstances and surroundings to determine whether or not he may cross with safety. This duty on the part of such persons approaching such railroad crossing must be exercised without reference to a failure on the part of operatives of the train to perform the duties incumbent upon them, and the failure to exercise such ordinary care is negligence on the part of such person approaching a railroad crossing."

The proposition under appellant's assignment is as follows:

"Where the court's general charge fails to adequately instruct the jury concerning vital principles affecting the issues in a lawsuit, and makes specific application of same to the facts of a case, it is the privilege of a litigant to request and have given a correct charge covering such matters, to refuse which would be error."

[5, 6] We concede readily that this proposition announces a rule of practice which is well established in this state, and in our opinion one that is sound and just. Ry. Co. v. McGlamory, 89 Tex. 639, 35 S. W. 1058; Ry. Co. v. Shieder, 88 Tex. 166, 30 S. W. 902, 28 L. R. A. 538. Upon comparison, however, of the instruction requested by appellant with that given by the court, we can see no substantial difference between the two; and, the requested instruction having been substantially given by the court in its main charge, there was no error in this connection, and the assignment is overruled.

The ninth assignment complains of the action of the trial court in refusing to grant a new trial upon the ground that the finding of the jury to the effect that appellee's automobile was damaged to the extent of $300 was without support in the evidence, for the reason that there was no evidence upon which the jury could estimate the value of the wrecked automobile, and that, it being a disputed question that there was some value attached to the automobile after the accident, there could be no basis for such finding by the jury.

In answer to this contention, appellee contends that since it is undisputed by the record that appellant took possession of the wrecked automobile immediately after the collision, and denied the right of appellee to touch or handle or remove the same, appellant was the only one in a position to give exact and definite information as to the amount of damage done to the automobile; that if appellant was not satisfied with the evidence introduced by appellee, showing the amount of damage as best he could, it was the duty of appellant to furnish such exact and definite evidence, and, failing to do so, the verdict of the jury on this issue ought to be conclusive.

The testimony bearing upon this contention, among other things, was as follows:

By appellee: "I have made an inspection of that car since the accident. I found it lying up there beside that ——; that was several months afterwards. I found out where the car was, and I went up and looked at it, and it was nearly gone. The engine was all gone, and the wheels gone. I don't know how many fellows had come along there. The railroad took possession of it. They got it all, as far as I know. I wasn't able to go and get it myself."

Appellee's wife, among other things, testified: "The railroad had a guard there, and he wouldn't let me touch a thing. I said, 'I am Mrs. Myrick,' and he said: 'You can't touch a thing. The railroad is guarding this.' That was the next morning after the accident. It was rather early, because Mr. Keith took me out there. He said (meaning the person in charge of the car) the railroad had given instructions not to let anybody touch the car. I wanted to examine the car and see what was there. There were four new tires on there. They had just been put on. I believe, and there was a $97 carburetor that had just been put on a day or two, and I wanted to see what was

there. I wanted to tell Mr. Myrick definitely what was there, and that is why I went out there. I didn't take any further steps to examine the automobile, as this guard was there. I don't suppose in this age and time he had a gun with him. As to whether or not he was intimidating me, well, he simply told me that he was there representing the railroad, and the road said not to let any one touch that car. After he said that, I told him I was Mrs. Myrick—and, of course, he couldn't keep me from looking at the car, but he said, 'Don't touch anything on this car.' That was both before and after I told him that I was Mrs. Myrick. He said, 'I am put here by the railroad company and cannot let any one touch this car.' "

It was further shown by an automobile dealer and expert, B. K. Appleman, that he was familiar with appellee's car, and, among other things, this witness testified that the fair market value of the car at the time of the collision was about $300. The witness further testified:

. "Now, unless she was taken out and you took a piece of paper, and got the price list on each part, the broken parts, you couldn't get an accurate estimate of it. However, the condition as I saw it, would leave it—if he had to buy those parts and replace it, there wouldn't be anything left. The fact is that the parts you have to buy piecemeal will cost you so much more than the parts would in the present condition it was wrecked, that if you put it together in the same shape it was running before, you wouldn't have anything left."

[7] The true measure of damages as to the automobile was, of course, the difference in the market value of the car immediately before and immediately after the injury to it. Wells Fargo & Co. Express v. Keeler, 173 S. W. 927.

[8] We concede that the extent of the damage done to the automobile is not shown with that definiteness that would ordinarily be required; but under the undisputed evidence to the effect that appellant immediately took charge of the automobile and refused the urgent request of appellee's wife to be permitted to examine the car, with a view to ascertaining the extent of the damage, and in view of the absence of any testimony in the record showing what appellant did with the car, or how much was left of it, or its value or condition after the injury, we are inclined to think that appellee ought not to be held to strict and exact proof as to the market value of the car after its injury, and we are inclined to think that the counter proposition of appellee on this point should be sustained. Ry. Co. v. Day, 104 Tex. 237, 136 S. W. 438, 34 L. R. A. (N. S.) 111; Pullman Co. v. Cox, 56 Tex. Civ. App. 327, 120 S. W. 1058.

By the tenth assignment, it is claimed that the court erred in refusing to grant a new trial because of the improper argument on the part of counsel for appellee. The remarks complained of on the part of appellee's counsel were, substantially, that although contributory negligence upon the part of appellee, as relied upon by the defendant, would defeat recovery by him, if found to exist by the jury, yet it was the view of counsel for plaintiff that the law in this respect was unfair and unjust to parties suffering damages or injuries in cases of this character. To this expression of views by plaintiff's counsel appellant excepted at the time, as shown by its bill in the record; but the record does not disclose that any request was made of the trial judge to instruct the jury to disregard these remarks.

[9] While we think that it was improper for counsel for appellee to state to the jury what his views were as to the policy of the law relative to the defense of contributory negligence, still we do not think that these remarks were of that inflammatory character or nature that would warrant this court in reversing the judgment on account thereof, and we overrule the assignment.

This disposes of all assignments in appellant's brief, and, being of the opinion that none of them point out any reversible error, they are overruled, and the judgment of the trial court affirmed, and it will be so ordered.