P. FREEMAN v. J. H. CARTER ET AL.

Decided March 1, 1902.

**1.—Negligence—Death—Wall Left Standing.**

Where a brick wall abutting on a street was left standing by the destruction of the building by fire, the owner would not be liable for the killing of a person while on the sidewalk by the falling of the wall, where he did not know it was unsafe, and had had it examined by a competent mechanic who reported it safe, and in so doing acted as a reasonably prudent man would have acted under the circumstances.

**2.—Action for Death—Damages—Parent and Son.**

For negligence causing the death of a son the parents are entitled to recover the pecuniary value of his services up to his majority, less the cost of his maintenance, and also such sum as would be equal to the pecuniary benefits they had a reasonable expectation of receiving after he attained majority.

Appeal from Hill. Tried below before Hon. Wm. Poindexter.

*Singleton & Bisland, Templeton & Harding,* and *Spell & Phillips,* for appellant.

*L. A. Carlton, A. P. McKinnon,* and *Wear, Morrow & Smithdeal,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—J. H. Carter and wife, C. A. Carter, instituted this suit in the District Court of Hill County to recover damages for the negligent killing of their son, Herbert Carter. The city of Hillsboro, W. W. Sturgis and his wife, Ellen H. Sturgis, and this appellant were made parties defendant in the cause. Plaintiffs alleged in substance that on or about November 7, 1898, Ellen A. Sturgis owned the west half of lot No. 4, in block No. 4, and appellant owned the east half of said lot situated in the city of Hillsboro, and that there were standing upon said lot two brick buildings, each of said buildings being two stories in height, one of which belonged to Mr. Sturgis and one to appellant. That on said date a fire occurred in said building, which destroyed the frame work, but certain parts of the wall were left standing. That the buildings were adjacent to and abutting upon the sidewalk of Elm street, one of the public streets of Hillsboro. That in front of and attached to said buildings were awnings extending over the sidewalks, and that the same was one continuous piece of awning across the entire front of the two buildings. That the fire burned out and gutted the buildings, heated and cracked the walls, which left then in an unsafe and unstable condition, likely to fall or be blown down by such winds as frequently occur; that their stability was utterly destroyed; that they did not stand upright but leaned over the sidewalk in such a manner as to make it apparent to any person of ordinary observance and intelligence that they could not stand, but would be compelled to fall to the ground in obedience to natural laws, or be

blown down by ordinary winds. That the owners of said buildings had notice of the condition of said walls, but with the reckless disregard of the safety of persons traveling along said street, willfully neglected to tear down or remove said walls or said awning or to place barriers to prevent persons from coming near said walls, or to place danger signals. That the front walls of said buildings were not separate and distinct walls, but was one and the same wall extending entirely across, and constituted the front of both the buildings, so that the front wall of one of the said buildings could not fall without pulling down the other. That the awning was so constructed that the wall could not fall without tearing down the awning. That on the 20th of November, 1898, the front walls of said building fell, carrying with them the awning, and that Herbert Carter, their son, was caught under said awning and said falling wall and was killed. That at the time said walls fell, Herbert Carter, with some other children, was traveling along the sidewalk in front of said building.

Plaintiffs charge the city of Hillsboro with negligently failing to have said walls pulled down and negligently failing to provide sufficient barriers of awnings and safeguards to prevent persons from going near to and under said dangerous walls.

Defendants W. W. and Ellen Sturgis alleged their residence to be in Grayson County at the time and ever since the injury resulting in the death of plaintiffs' son, and interposed their plea of privilege to be sued in the county of their residence.

Defendant Freeman answered by general and special exceptions, general denial, and further pleads that if plaintiff's son was killed by the falling of a wall the same was a wall over which he had no control, and concerning which he owed no duty to the public or the plaintiff. That his wall after said fire and before said fall was a good, safe, and substantial wall, and not liable to fall or be blown down by winds usual at that season of the year in this section of the country. That the wall was blown down by an unprecedented windstorm; that plaintiff's son knew of the danger of going in and about said building and contributed by his own negligence to his own death.

On the 18th of March, 1901, the case went to jury trial, which resulted in a judgment in favor of W. W. Sturgis and wife on their plea of privilege, and in favor of plaintiff against this appellant for the sum of $1500, and in due time appellant presented his amended motion for a new trial, which motion on April 20, 1901, was by the court overruled, to which action of the court appellant excepted and gave notice of appeal to this court and perfected his appeal.

*Opinion.*—The court instructed the jury that "If you believe from the evidence that after the brick building standing upon the lot owned by defendant Freeman was burned, as alleged in plaintiffs' petition, the front wall thereof, by reason of said fire, was left in such an unsafe and

unstable condition as same was likely to fall or to be blown down by such winds as frequently blow and are ordinarily incident to this climate at said season of the year, and that defendant knew that said wall was left standing in said condition, or that he could, by the exercise of ordinary care, have known said fact, and that he negligently permitted the same to stand and failed to brace or strengthen said wall, and that such failure was negligence on his part, and that while standing in said condition said wall was blown down by an ordinary wind, about the time alleged in plaintiffs' petition, and that the son of plaintiffs was thereby killed, and that plaintiffs have been damaged thereby, and that such negligence of the defendant was the direct cause of such injury and damage, then you will find for the plaintiffs." In this charge the learned trial judge properly left to the jury the issue whether Freeman after the fire had knowledge that the wall was unsafe, or if not, that he could in the exercise of ordinary care have acquired such knowledge. On the issue as to whether the wall was unsafe there is evidence both ways. On the issue as to whether Freeman knew that the wall was unsafe the evidence shows that he had no actual knowledge that it was unsafe other than such information as one with his experience would acquire by looking at the wall. He testified that he believed the wall was safe. In this condition of the testimony it became important to know whether Freeman used ordinary care to discover the condition of the wall. The testimony showed that Freeman did not live at Hillsboro, but resided at Ennis, Texas, about seventy miles from Hillsboro. That he was not experienced in regard to brick buildings. That after the fire in November, 1898, he went to Hillsboro and there made inquiry as to who was a competent person in that line. He was referred to John Hughs, as such person. Freeman employed Hughs to examine the walls and report to him their condition. He told Hughs if the walls were dangerous to tear them down and send him the bill and he would pay it. Hughs did examine the walls and reported to Freeman that the walls were absolutely safe. There is evidence that Hughs was a reliable, competent, and skillful mechanic. Freeman believed what Hughs told him and acted upon it. In this state of the evidence the defendant requested the following charge: "Gentlemen of the Jury: At the request of P. Freeman, defendant, you are further instructed in connection with the main charge, that if you believe from the evidence that P. Freeman, within a reasonable time after the fire, employed one John Hughs to inspect and examine his said wall for the purpose of ascertaining whether or not the same was safe and not liable to fall, and that said Hughs was a competent and reputable workman and contractor, and that asid Freeman exercised ordinary care for said purpose, and further believe that said Hughs did examine said wall and report to Freeman that the same was sound and not dangerous and that said wall would stand; and you believe that said Freeman, in the exercise of ordinary care, and acting in good faith, believed said report and acted on same, then you will find a verdict for the defendant, Freeman." The court refused this charge.

Freeman was not liable unless he omitted a duty he owed to the public. If he did not know the wall was unsafe, and could not by the use of ordinary care have known it, he would not be chargeable for a neglect of duty. Schell v. Bank, 14 Minn., 34; Schwarz v. Gilmore, 45 Ill., 455. Whether he used ordinary care in reference to the wall was a material issue in the case. The charge of the court was general. The appellant was entitled to a charge applying the law to the facts. The appellant sought to have this done by his special charge. If appellant was inexperienced in brick structures and walls of this character and did not know that the wall was unsafe, and he, in good faith, for the purpose of ascertaining the condition of the wall with a view of removing it if he found it unsafe, employed a competent and skillful mechanic to examine the wall and ascertain if it was safe, and such person did examine it and report it safe, and if, in so doing, appellant acted as a reasonably prudent person under the circumstances would have acted, then appellant would not be liable. We conclude that appellant's eighth assignment of error, which complains of the action of the court in refusing the special charge above quoted, is well taken.

2. Complaint is made by appellant of the tenth paragraph of the court's charge, which relates to the measure of damages. This charge is: "If you find for the plaintiffs, you will find for them such sum of money as you may believe from the evidence to be the pecuniary value to the plaintiffs of the services of their deceased son, Herbert Carter, from the time of his death until he shall have arrived at the age of twenty-one years, after deducting therefrom the costs and expense of his maintenance for the same period of time. In examining the value of his service you may look to the habits and energy of the deceased, Herbert Carter, his age, his intelligence and disposition, and in estimating the cost of his maintenance you may take into consideration the probable cost of his board, clothing, and all such other expenses as his parents would probably have incurred on his account during the period of his minority. And if you find for plaintiffs you may find such other sum as the evidence may show would be equal to the pecuniary benefits the plaintiffs had a reasonable expectation of receiving from the said Herbert Carter, if any they had, after he reached the age of twenty-one years, had he not died. Plaintiffs are not entitled to recover, and you can not find anything for them on account of mental suffering, grief, or bereavement incident to the death of said Herbert Carter." It is contended that this charge allows the jury to find the gross amount of all sums of money which the plaintiff would likely receive from Herbert Carter after arriving at the age of twenty-one years, had he lived. The contention is not sound. The charge authorizes the jury to find "such sum as the evidence may show would be. *equal to the pecuniary benefits* the plaintiffs had a reasonable expectation of receiving from said Herbert Carter, if any they had, after he had reached the age of twenty-one years, had he not died." This language in a charge on the measure of damages in personal injury cases has been approved by the Supreme

Court. Railway v. Morrison, 93 Texas, 529; Railway v. Lee, 70 Texas, 503; Galveston v. Barbour, 62 Texas, 174.

For the error indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*