PLANTERS' GIN CO. v. WASHINGTON.

(Court of Civil Appeals of Texas.    Dec. 3, 1910.    Rehearing Denied Dec. 24, 1910.)

1. MASTER AND SERVANT (§ 293*)—MASTER'S LIABILITY—INSTRUCTIONS—MISLEADING INSTRUCTIONS—"REQUIRING."

In an action for injuries to a servant while painting a roof, the court instructed the jury that if the master was guilty of negligence "in requiring plaintiff to go upon said ladders on the roof," etc. There was evidence that plaintiff was told to go upon the roof, etc., but there was nothing to show that he was compelled to do so. Held, that the word, "requiring" was used by the court in the sense of "directed," and could not have mislead the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1159; Dec. Dig. § 293.*

For other definitions, see Words and Phrases, vol. 7, pp. 6122-6125.]

2. MASTER AND SERVANT (§ 293*)—MASTER'S LIABILITY—ACTIONS — INSTRUCTIONS WARRANTED BY EVIDENCE.

In an action for injuries to a servant while painting a roof through supporting ladders coming untied, the vice principal of the defendant testified that the ladders were tied together with a trace chain, which had been used for three years to fasten them, and that he tied it in two knots, and at the time of the accident the chain was tied as it had been customary for the past two years. Held, that an instruction, to the effect that if the vice principal fastened the ladders together on the day of the injury just as he had fastened them for the same purpose for three seasons, and believed that he was fastening them in a safe manner, etc., was warranted by the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1150; Dec. Dig. § 293.*]

3. MASTER AND SERVANT (§ 116*)—MASTER'S LIABILITY—SAFE PLACE TO WORK—NEGLIGENCE OF MASTER.

A master is bound to furnish the servant with a safe place to work and must use ordinary care in doing so; therefore, where a master had a servant painting a roof, and he was using two ladders which were tied together, one on each side of the roof ridge, if they were tied with a chain in the usual manner which the master had reason to believe was safe, and which an ordinarily prudent person under those circumstances would have believed to be safe, the master is not liable because they came apart and caused an injury to the servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

4. MASTER AND SERVANT (§ 295*)—MASTER'S LIABILITY—INSTRUCTIONS — ASSUMPTION OF RISK.

In an action against a master for injuries received by his servant while painting a roof, which occurred through the falling of two ladders which were tied together, and placed one on each side of the ridge of the roof, the servant testified to the effect that he saw that day how they were tied together just before the injury, and looked at them, etc. Held, that this testimony warranted an instruction upon the issue of assumption of risk, based on the knowledge of the servant as to how chains were tied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168-1179; Dec. Dig. § 295.*]

5. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY—ASSUMPTION OF RISK—KNOWLEDGE OF DEFECTS BY SERVANT—LADDERS.

Where a servant was injured while painting a roof because two ladders which were tied together, one being on one side of the ridge of the roof and the other on the other, came apart, the servant assumed the risk and cannot recover if he saw how they were tied immediately before the injury, and knew as well as any one whether or not it would hold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 584-592; Dec. Dig. § 217.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by Ed Washington against the Planters' Gin Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Morrow & Smithdeal, for appellant. Frazier & Shurtleff, for appellee.

RAINEY, C, J. Appellee sued the appellant to recover damages for personal injuries received by him from falling off of a house, which resulted in his having his leg amputated. The cause of action alleged, in substance, was: "That on or about July 15, 1909, he was a servant of the Planters' Gin Company, a corporation, and was ordered by Tom Green, agent and vice principal of such corporation, to paint the roof of the ginhouse; that the roof was steep and that the vice principal, Green, tied two ladders together with a chain and placed them so that there was a ladder on each side of the comb; that while appellee was on one of the ladders, they parted and appellee fell and was injured. The negligence was alleged to consist of the failure of appellant to furnish appellee a safe place to work or a safe appliance to work with, and of the manner in which the ladders were tied together." Appellant answered by general demurrers, general denial, contributory negligence, and assumed risk. A trial resulted in a verdict and judgment in favor of appellee, and appellant appeals.

The court, in substance, charged the jury that if they believe plaintiff was on a certain ladder on defendant's gin, which ladder was fastened to another one, and believe the ladders were insecurely fastened, and that the defendant was guilty of negligence in fastening them, the defendant was guilty of negligence in requiring plaintiff to go upon said ladders, etc., to find for plaintiff.

The proposition submitted is, in effect, "that it was not warranted by the evidence, in that the word, 'require,' implies the right to demand obedience, and same was calculated to lead the jury to believe there was evidence that he was compelled to go on the ladder."

There was evidence to the effect that appellee was in the employ of appellant, but was told by the manager to go upon the house for the purpose of painting the roof. While up there on one of the ladders, which was tied to another at one end and thrown across the comb of the house, the ladders

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

parted, throwing appellee to the ground, some 20 or 30 feet, breaking his leg, which had to be amputated.

There is nothing in the evidence to show that appellee was compelled to go upon the house, and the word, "require," was evidently used by the court to convey to the jury the idea that if they believed the appellee was directed to go on the house by appellant, they should find for plaintiff. The jury could not have possibly been misled, and the assignment presents no reversible error.

The following charge was requested by appellant, but was refused by the court, to wit, "If you believe from the evidence that Tom Green fastened the ladders together on the day of the injury just as he had fastened them for the same purpose for three seasons, and that he believed at the time he so fastened them on the day of the injury that he was fastening them in a safe and proper manner, and that they would hold together, and further believe from the evidence that a reasonably prudent person, under the same circumstances, would have fastened the ladders together for said purpose as Tom Green fastened them, then, and in that event, you will find for the defendant."

Tom Green, the vice principal of appellant, testified: "The ladders were tied together with a trace chain nearly eight feet long, and we had used it for three years to fasten those ladders together on top of the roof, for the purpose of painting the roof, and it was wrapped around the top strips of ladder, one by fours, and tied in two knots. We had been using those chains to tie the ladders with for three years—three seasons. The knot in the chain on the occasion of this accident, at the time that I left it, was tied just like I had always tied the knots for two years. It was tied in two hard knots, just like we always tied it."

It was the duty of appellant to furnish appellee a safe place to work, and the measure of this duty was the use of ordinary care. Whether or not appellant was guilty of negligence in fastening the ladders together was the issue to be determined by the jury, and in order to establish liability on appellant, it was necessary to show the want of care on its part. The evidence was sufficient to raise the issue. The charge is a correct exposition of the law, and the court erred in refusing it. Freeman v. Carter, 28 Tex. Civ. App. 571, 67 S. W. 528.

The court also erred in refusing the following charge requested by appellant, viz.: "If you believe that plaintiff saw and knew the manner in which the ladders were fastened the day before the injury, and that they were fastened the same way the day of the injury, and further believe that just before the injury that plaintiff assisted in shifting or moving the ladders and in so doing the chain and the way it was tied were in view of the plaintiff, and that he

untied the bucket from said chain shortly before the injury, and that by the use of his senses he must have seen and known that said ladders were fastened the way they were the day before, then you will find for the defendant."

Appellee testified as follows: "The ladders were fixed, one on one side of the roof and the other on the other side of the roof, across the comb of the roof, like a saddle on a horse. I saw how they were tied together. I know how they were tied together. The chains were not wrapped around the rung of the ladder. They were just run through the step of the ladder and tied in a hard knot. I saw how it was tied then, the day before, and I thought it was safe. I could tell as well as anybody about whether it was safe. I could see it and could tell just as well as anybody how it was tied and whether it would hold." Appellee further testified that, "on the day of the injury and just before the injury, Tom Green, appellant's vice principal, came on the roof and helped him move the ladders around the dust flue." He further says: "I reckon the ladders were then about three feet from the dust flue, and I was between them and the dust flue, with my face toward the ladder; that is, I don't remember just how my face was, but that was how I got around. I came around face foremost. I didn't turn around after I got around there. I was still looking toward the west and my face was in the direction of the ladders. Mr. Green set the box that set on the comb of the roof right down between the ladders and the dust flue, and when I come over there I moved the little box on the other side of the ladder—moved it right across the ladders. In doing that, I just leaned over across the ladders and pushed it over. Mr. Green pulled the two ladders up together to tie them. Mr. Green held them while they were being tied. He had one foot under one and one under the other, straddling the comb." Tom Green testified: "We had been using those chains to tie the ladders with for three years. The knot in the chain on the occasion of this accident, at the time that I left it, was just like I had always tied the knot for two years. It was tied in two hard knots, just like we always tied it." There was testimony by appellee, also, to the effect that he never noticed how the chain was tied the second time, that he did not think about the chain giving way, etc.

We think the testimony raised the issue as to the knowledge of appellee as to how the chain was tied. If he knew, or must necessarily have known from his situation and connection with the ladders, he is chargeable with notice of how it was tied and assumed the risk of going on the ladder. The charge was applicable to the facts and should have been given.

For the errors indicated, the judgment is reversed and cause remanded.