## FARMERS' GIN & MILLING CO. et al. v. JONES.

(Court of Civil Appeals of Texas. Dallas. May 4, 1912. Rehearing Denied May 25, 1912.)

1. CORPORATIONS (§ 30*)—PROMOTERS — LIABILITY.

Promoters of a corporation to be organized pursuant to appointment by the stock subscribers to manage and superintend work done in furtherance of the enterprise in which the corporation when chartered will engage in are not liable as promoters for injuries to an employé engaged in the work.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Persons acting as promoters of a corporation and in superintending work done in furtherance of the business in which the corporation when chartered will engage in are liable individually for their negligence resulting in an injury to an employé engaged in the work, and an error in an instruction holding them liable as promoters is not prejudicial to them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

3. TORTS (§ 22*)—PARTIES LIABLE.

All persons who participate in any manner in a tort are jointly and severally liable to one injured thereby, and he may sue one or all of the wrongdoers.

[Ed. Note.—For other cases, see Torts, Cent. Dig. §§ 29, 31; Dec. Dig. § 22.*]

4. CORPORATIONS (§ 30*)—PROMOTERS—INJURIES TO EMPLOYÉ—PERSONS LIABLE.

A member of a temporary association organized for the purpose of forming a corporation, and interested in work done in furtherance of the business in which the corporation when chartered will engage in, is liable for injuries sustained to an employé engaged in the work, though he was not present at the time of the injury and acted merely as assistant manager of the work.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

5. MASTER AND SERVANT (§§ 101, 102*)—INJURY TO SERVANT—OBLIGATION OF MASTER.

A master must use ordinary care to furnish a servant a safe place in which to work,

and such care is measured by the risks incident to the work and differs according to the dangerous character of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

6. MASTER AND SERVANT (§ 208*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

An employé may assume that the place at which he is required to work is reasonably safe, and he may act on such assumption unless he is informed that the place is unsafe or has learned that the place is not safe, or he may have learned of the unsafe condition by the use of ordinary care for his own safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 551; Dec. Dig. § 208.*]

7. TRIAL (§ 191*) — INSTRUCTIONS — WEIGHT OF EVIDENCE.

An instruction in an action for injuries to an employé by the explosion of dynamite in an excavation that, if plaintiff was an employé and was working at a place where blasting was being done, and if the employer bored a number of holes and placed dynamite therein and attempted to explode dynamite in all the holes, and the dynamite in one of them failed to explode, and if while the unexploded dynamite was in the hole plaintiff returned to his work and was injured by the explosion of the dynamite, and if the employer failed to exercise ordinary care to ascertain whether all the dynamite had exploded, and such failure was the proximate cause of the accident, the verdict should be for plaintiff was not objectionable as on the weight of the evidence and as assuming the employer's negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

8. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—INSTRUCTIONS.

A charge in an action for injuries to an employé that, if the jury believe from a preponderance of the evidence that the employers or either of them failed to exercise ordinary care, a recovery was authorized properly submitted the issue of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

Appeal from District Court, Ellis County; C. M. Smithdeal, Judge.

Action by Reuben Jones against the Farmers' Gin & Milling Company and others. From a judgment for plaintiff against defendants John M. Harrison and J. C. Culbertson, the defendants named appeal. Affirmed.

G. C. Groce, of Waxahachie, for appellants. Clyde F. Winn and Supple & Harding, all of Waxahachie, for appellee.

RAINEY, C. J. Reuben Jones, appellee, sued appellants, the Farmers' Gin & Milling Company, the Farmers' Gin Company, both corporations, John M. Harrison, and J. C. Culbertson, to recover damages for personal injuries sustained by him from an explosion of dynamite in an excavation in which he was working. Appellants answered by general denial, contributory negligence, assumed risk, and that the injury resulted from the act of his fellow servants. The court instructed a verdict for the two corporations, from which there is no appeal, and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

on the issues presented the jury found a verdict against Harrison and Culbertson, from which they appeal.

"The evidence shows that in 1910, and prior to the accident to appellee, there was at Waxahachie, Tex., a corporation known as the Farmers' Gin Company, the stockholders of which desired to add a cotton seed oil mill to their business. To accomplish this it was decided to disorganize the gin company and form another corporation to be called the Farmers' Gin & Milling Company. The stockholders of the gin company were to take stock in the milling company in lieu of their stock in the gin company. All of the stockholders of the gin company agreed to this, and it was contemplated that the remainder of the stock of the oil mill company should be otherwise subscribed. Appellants were stockholders in the gin company and were active in all these matters, as well as in soliciting subscriptions of stock of the contemplated oil company and generally in its promotion, and themselves subscribed for $33,000 and $25,000, respectively, of the stock of the proposed corporation. They afterwards with one Jack Killibrew incorporated the company. They testified that a good portion of the stock so subscribed was not to be theirs permanently, but was taken in order to get out the charter with the intention of transferring part of it to others who might want it and did not then have the money to put up for it. Prior to the accident to appellee, the subscribers to the stock of the proposed milling company formed a temporary organization and elected a temporary board of directors, and this board elected appellant Harrison general manager and appellant Culbertson assistant general manager, and under this organization buildings for the use of the contemplated corporation were being erected. Contracts for material and machinery for its use were entered into, and for its benefit the Trinity & Brazos Valley Railway Company, contiguous to whose track such buildings were being erected, was induced to agree to lay a switch track on its right of way contiguous to such buildings. In this work it was necessary to excavate, and in part through white rock, which work was undertaken by the temporary organization above mentioned, under the supervision of appellant Harrison when present, and under appellant Culbertson in his absence. Appellee was a hand employed in this work, and while so employed on June 14, 1910, and using a pick in his work, he struck and exploded a charge of dynamite in the white rock, of the presence of which he claimed to be ignorant, resulting in the injuries for which he sued. The milling company was incorporated August 3, 1910, with an authorized capital stock of $85,000."

Appellee was employed by appellants Harrison and Culbertson to work in the excavation for the switch to dig dirt and rock with a pick and help load it on wagons after it was dug loose with picks or torn up with dynamite. He was told to obey Henry Flowers in the absence of Harrison and Culbertson and do what Flowers said do, and that, in the absence of Harrison and Culbertson, the men engaged in this work took their orders from Henry Flowers who did the dynamiting. It was Flowers' duty to keep track of all charges of dynamite that failed to explode, and to warn the workmen of, and protect them from, such charges, remove, or explode the same. Appellee and those working with him could not do the work assigned them and keep track of the number of charges of dynamite set by Flowers, and which of such charges exploded and which did not, and that they depended on Flowers to warn them of unexploded dynamite. Appellee had been at work about 10 days on this switch site when he was injured, during which time Henry Flowers had charge of the dynamite work, and, on the morning of the day he was hurt, Flowers set a number of charges of dynamite and had an explosion, after which he (Flowers) and appellant Harrison ordered the workmen, including himself, to return to their work, saying that all danger was over. They did return to their several places of work and resumed work when a charge of dynamite that had not before gone off exploded, whereupon he and other workmen stopped, and asked appellant Harrison whether there was any more unexploded dynamite in the excavation, and were assured by said Harrison that there was not, and were told by him to go on to work as all danger was over. Whereupon they resumed work and continued up to the noon hour. He was inexperienced in the use of dynamite, and when exploded in the way this work was being done, many charges being placed, and it being attempted to explode them about the same time, those which did explode would scatter dirt, rock, etc., so as to cover up those which might not explode. He further testified that after dinner Harrison, with Flowers' knowledge, ordered the men, including himself, back to work; they obeyed such orders, and shortly afterwards, about 2 or 2:30 p. m., while working in the excavation with his pick, the pick struck a charge of dynamite, of which he was ignorant, and exploded it, resulting in serious injuries to him.

[1, 2] Appellant complains of the fourth paragraph of the court's charge which reads as follows: "If you believe from a preponderance of the evidence that John M. Harrison and J. C. Culbertson were acting as promoters of a corporation to be known as the Farmers' Gin & Milling Company, and as such promoters were doing, or having done, the work where the blasting was being carried on, or if you should believe from

the preponderance of the evidence that they were conducting such work as individuals, and for their own private ends having the blasting done, they would be liable as individuals for any injuries proximately caused to their employés by their negligence, if they were guilty of negligence."

Under the foregoing assignment is submitted the following proposition: "While the evidence showed that appellants were promoters of the Farmers' Gin & Milling Company, it further showed beyond controversy that, when appellee was injured, they were acting, in so far as he was concerned, not as promoters of said proposed corporation, but as the agents of a preliminary organization of the subscribers to the stock of such proposed corporation, and in the prosecution of work that had been undertaken by such preliminary organization, and there was no evidence that appellants were having such work done in any other capacities, or as individuals, for their own private ends; 'promoter' does not include the capacities in which appellants were acting when appellee was injured."

It appears from the evidence that the stockholders of the Farmers' Gin Company had concluded to disorganize and form another corporation to be called the Farmers' Gin & Milling Company in order to enlarge the business. To do this an increase in capital stock was necessary. Harrison and Culberson subscribed for a large part of this stock with the intention of disposing of part of it to other proposed subscribers. Appellants were promoters of this enterprise, and they, with the other subscribers, concluded to go ahead with the work of making the improvements that were necessary, though up to this time the Farmers' Gin & Milling Company had not been incorporated, but shortly afterwards it was duly chartered. Appellants were duly appointed by the said organization of stock subscribers to manage and superintend the work that had been undertaken by them. They accepted the appointment and were so acting when appellee was injured.

We are of the opinion that the facts do not show appellants liable as promoters as the work being done was not in furtherance of securing a charter, but was in furtherance of the enterprise itself; that is, of the business in which they were to engage when the charter was procured. While this is true, we are of the opinion that no harm resulted to appellants as the evidence shows they were personally liable for their acts individually, as well as being members of the voluntary organization having the work done.

[3] All parties who participate in any manner in the commission of a tort are jointly and severally liable to the party injured and one or all may be sued, and, if all are not sued, those sued cannot defeat liability for that reason. Moore v. Kopplin, 135 S. W. 1033; Cooley on Torts (3d Ed.) p. 244.

[4, 5] The court charged the jury that, "if the plaintiff was in the employment of Culbertson and Harrison, or either of them, then it was the duty of his employer or employers to exercise ordinary care to furnish the plaintiff a safe place to work, and this duty the employer cannot delegate to others. The care required of an employer in this respect must be measured by and reasonably proportioned to the risks incident to the work which the servant is engaged in doing. Now if you should believe from a preponderance of the evidence that plaintiff was an employé of Harrison and Culbertson, or either of them, and was at work at a place where blasting was being done with dynamite, and plaintiff's employer or employers failed to exercise ordinary care, as that term is defined in this charge, to furnish plaintiff a reasonably safe place to work, and should further believe from the evidence that such failure (if there was such failure) on the part of his employers or employer was the proximate cause to plaintiff's injuries (if he was injured), then he would be entitled to recover against such employers or employer as failed to exercise such care." This charge forms the basis for the second assignment of error.

It is contended that the charge is error in submitting any issue of liability of appellant Culbertson as there is no evidence to support the finding against him. Culbertson was a stockholder, one of the temporary association, and assistant manager of the work. It is true he was not present at the time of the injury, nor did he at the time give any orders to the men to go to work, but, being a member of the association and interested in the work, he was responsible for the acts of Harrison in furtherance of the work and liable therefor.

The charge was correct in telling the jury that it was the duty of the master to use ordinary care to furnish the employé a safe place to work and that the care required is measured by the risk incident to the work which the servant is engaged in doing. While all care is ordinary care, it differs in degree according to the dangerous character of the work to be performed, and this rule was enunciated in the charge.

[6] The court, at appellant's request, gave this instruction: "Gentlemen of the Jury: In addition to the main charge already given you, the court instructs you that the plaintiff, Reuben Jones, had the right to assume that the place at which he was injured was a 'reasonably' safe place in which to work, and to act on such assumption unless he was informed that the said place was unsafe (if it was), or learned that the same was not safe (if it was not), prior to the accident in question, or unless he could have learned of the unsafe condition of such place

(if it was unsafe) by the use on plaintiff's part of ordinary care for his own safety." We are of the opinion that the charge was not erroneous as complained of. Railway Co. v. Bingle, 91 Tex. 287, 42 S. W. 971; Gin Co. v. Washington, 132 S. W. 880.

[7, 8] The third assignment of error is complained of in the sixth paragraph of the court's charge for several reasons. Said paragraph reads: "If you believe from a preponderance of the evidence that the plaintiff, Reuben Jones, was an employé of John M. Harrison and J. C. Culbertson, or either of them, and was working at a place where blasting was being done with dynamite, and that on or about July 14, 1910, the said Harrison and Culbertson, or either of them, acting by and through one Henry Flowers, or other employés, bored a number of holes and placed dynamite therein and attempted to explode the dynamite in all of said holes, and that the dynamite in one or more of said holes failed to explode; and if you further believe from a preponderance of the evidence that while said unexploded dynamite was still in the hole or holes the plaintiff returned to his work at or near the place where such unexploded dynamite was, and that while he was at work at or near the same said dynamite exploded and injured him as alleged in his petition; and if you should further believe from a preponderance of the evidence that the defendants Harrison and Culbertson, or either of them, failed to exercise ordinary care to ascertain whether all of said dynamite was exploded, or that they or either of them failed to exercise ordinary care to prevent the plaintiff from returning to said place where said unexploded dynamite was, and that, as the proximate result of such failure to exercise ordinary care in the respects mentioned (if there was such failure), the plaintiff was injured; or if you should believe from a preponderance of the evidence that, while unexploded dynamite was still in said hole or holes, the defendant Harrison told the plaintiff in effect that the dynamite was all exploded and directed him to return to work, and that the said plaintiff, acting upon such statement and direction of said Harrison (if such statement was made or direction given), returned to work at or near the place where said unexploded dynamite was and that, after he returned and started to work (if he did), the dynamite exploded and plaintiff was injured as alleged in his petition; and if you should further believe from the evidence that, in so informing plaintiff that all the dynamite was exploded and directing him to go to work (if such statement was made or direction given by him), the said Harrison was guilty of negligence, as that term is elsewhere defined in this charge; and should further believe from the evidence that such neglect (if any) was the proximate cause of the plaintiff's inju-

ries (if he was injured)—then in either of said events you will return a verdict for the plaintiff against the defendant or defendants whose negligence you may find and believe from the evidence proximately caused plaintiff's injuries, unless you find for the defendants under other issues submitted to you."

The contention that this charge is on the weight of evidence and assumes that failure to do the things mentioned would constitute negligence is not well taken. One of the criticisms is that the court did not submit to the jury the issue whether or not it was negligence in appellants as to the discovery of all the dynamite having exploded. The charge tells the jury that if they "believe from a preponderance of the evidence that the defendants Harrison and Culbertson, or either of them, failed to exercise ordinary care to ascertain whether all of said dynamite was exploded," etc. The use of this language was equivalent to the term "negligence," and the charge is not erroneous. We do not think the charge subject to the criticism made, and the assignment is overruled.

We find no material error in the record, and the judgment is affirmed.